Tyler B. Ayres, Bar No. 9200
Daniel M. Baczynski, Bar No. 15530
AYRES LAW FIRM
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 255-5555 Phone
(801) 255-5588 Fax
tyler@ayreslawfirm.com
Daniel.ayres@gmail.com
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
STATE OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ANEXORA LEON,<br><br>On behalf of Plaintiff and class,<br><br>vs.<br><br>SUMMIT COUNTY and OFFICER GRAHAM,<br><br>Defendants. | **SECOND AMENDED COMPLAINT AND JURY DEMAND**<br><br>Case No: 2:17-cv-0165<br><br>Judge: David Nuffer |

Anexora Leon (Leon), by and through her attorneys, Ayres Law Firm, and for her Second Amended Complaint against Defendants, states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's cause of action arising under the Constitution of the United States and 42 U.S.C. § 1983 and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's causes of action arising under the Utah state law pursuant to 28 U.S.C. § 1367.

1

2. Venue lies in the United States District Court for the District of Utah because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Summit County, Utah. 28 U.S.C. § 1391(b)(2).

3. Defendants are subject to personal jurisdiction within this district.

## PARTIES

4. Plaintiff Leon is a Utah resident residing within State of Utah.

5. Defendant Summit County is a municipal entity located within the State of Utah.

6. Upon information and belief, Defendant Officer Graham is a Utah citizen residing within Summit County, State of Utah and at the time of the incident, was employed by the Summit County Sheriff's Office.

## GENERAL ALLEGATIONS

7. On October 27th, 2016, Officer Mike Graham observed a silver Chrysler 300 traveling westbound on Highland Drive,

8. Officer Graham ran a computers records check on the license plate affixed to the rear bumper of the Chrysler.

9. The computers records check revealed a cancelled registration for the license plate.

10. Officer Graham stopped the Chrysler 300.

11. Leon was the driver of the Chrysler 300.

12. Leon told Officer Graham that the license plate for the vehicle was in the trunk of the vehicle.

13. After Leon opened the trunk, Officer Graham discovered license plates that were consistent with the registration of the vehicle and Leon.

14. Officer Graham had detained Leon for nineteen (19) minutes at this point, wherein Leon had demonstrated no signs of impairment.

15. Detective J. Bowers arrived to assist Officer Graham at about twelve minutes into the traffic stop.

16. Officer Graham discussed the stop with Detective Bowers but made no mention that he believed Leon was intoxicated or that he detected the odor of alcohol.

17. During the conversation, Officer Graham described Leon as "nice and perfectly compliant".

18. Detective Bowers told Officer Graham Leon smelled like alcohol, stating it seemed like Leon was drinking beer from a green cup in Leon's cup holder.

19. Officer Graham then decided to question Leon about alcohol.

20. Officer Graham asked Leon if she had been drinking and she replied she had consumed one beer at lunch.

21. Leon showed no other signs of intoxication.

**FIELD SOBRIETY TESTS**

22. Officer Graham began the field sobriety tests by performing the HGN test.

23. The HGN test requires the stimulus, usually the officer's finger, to be passed between 12 and 15 inches in front of the individual.

24. The HGN test also requires the stimulus not be curved upward or downward during the passes.

25. Officer Graham passed the stimuli so close to Leon that Leon mentioned during the HGN that the finger almost touched her.

26. Officer Graham also moved the stimuli up and down while passing the stimuli in front of Leon.

3

27. Officer Graham claimed to detect four clues of impairment while performing the HGN.

28. Four clues on the HGN indicates a likely BAC above .10.

29. Leon's BAC was .01.

30. Either Officer Graham lied about detecting four clues on the HGN or was improperly trained in detecting clues on the HGN.

31. Officer Graham then conducted the Nine Step Walk and Turn.

32. While demonstrating the Nine Step Walk and Turn, Officer Graham failed to properly instruct Leon as to what was required of her.

33. Leon performed the test with no issues regarding her balance.

34. Officer Graham even applauded Leon on her balance.

35. Officer Graham claims to have found two signs of intoxication in the Nine Step Walk and Turn: one for starting to early and one for planting her feet after the turn.

36. Both of the signs can be explained by Officer Graham's failure to properly instruct Leon on how to perform the test.

37. Two signs on the Nine Step Walk and Turn test indicates a likely BAC above .10.

38. Leon's BAC was .01.

39. Either Officer Graham lied about detecting two clues on the Nine Step Walk and Turn or was improperly trained in instructing and detecting clues on the Nine Step Walk and Turn.

40. Officer Graham then had Leon perform the One Leg Stand.

41. Officer Graham detected no sign of impairment on the One Leg Stand.

42. During the One Leg Stand, Officer Graham ordered Leon to "count out loud".

43. Officer Graham then compared Leon's counting in comparison to thirty seconds.

44. At no time did Officer Graham instruct Leon on how he wanted her to count off seconds.

45. In addition, the One Leg Stand is not a test for determining an individual's internal clock.

46. Officer Graham then had Leon perform the Rhomberg balance test.

47. The Romberg balance test is not a standardized field sobriety test governed by NHTSA.

48. The Rhomberg balance test consists of having an individual close their eyes and tilt their head back while remaining standing for thirty seconds, measuring balance and internal clock (a slower internal clock would indicate possible alcohol impairment).

49. Leon had no issues with balance but did calculate thirty second at eighteen seconds.

50. A faster internal clock is not evidence of alcohol impairment.

51. Officer Graham then had Leon perform one additional test where the officer circled his finger around Leon's face before coming close to her nose.

52. Upon information and belief, this test is not an accepted field sobriety test.

53. Officer Graham did not indicate any signs of impairment were observed in this final test.

54. Officer Graham then arrested Leon.

55. Following the arrest, Officer Graham requested that Leon provide a portable breath test sample.

56. Leon repeatedly requested the opportunity to call a friend prior to providing the breath sample.

57. Leon works with children and was concerned her one beer could show up as above .08 on the PBT.

58. Officer Graham considered this a refusal.

59. Officer Graham cited Leon with a DUI.

60. Officer Graham submitted the citation to Summit County Justice Court.

61. Leon provided a blood sample.

62. Leon's BAC at the time of the blood draw was .01.

63. Leon was charged with a DUI by Summit County on November 1, 2016.

64. Summit County moved to dismiss the case with prejudice on January 17, 2017 and the court granted dismissal.

## FIRST CLAIM FOR RELIEF
### § 1983 Claim for Unreasonable Search and Seizure against Officer Graham

65. The foregoing paragraphs are incorporated by reference.

66. Officer Graham initiated a traffic stop of Leon's vehicle.

67. Officer Graham initiated the traffic stop based on the vehicle's cancelled registration.

68. Officer Graham did not initiate the traffic stop due to a suspicion of DUI.

69. During the traffic stop, Leon exhibited no signs of intoxication.

70. Other than the odor of alcohol in Leon's vehicle and Leon's admission that she had a beer for lunch, Officer Graham had no basis for suspecting Leon was driving while impaired.

71. Based on the totality of the circumstances, Officer Graham lacked the reasonable suspicion required to expand the scope of the stop.

72. The field sobriety tests did not indicate Leon was impaired.

73. Based on the totality of the circumstances, Officer Graham lacked reasonable suspicion to arrest Leon for DUI.

## SECOND CLAIM FOR RELIEF
### § 1983 against Summit County for Failure to Train

74. The foregoing paragraphs are incorporated by reference.

75. Summit County, through Summit County Sheriff's Office, has an obligation and responsibility to train its officers regarding the proper procedure for DUI investigation.

6

76. Summit County through the Sheriff's Office failed to adequately train Officer Graham regarding the necessary reasonable suspicion to expand the scope of a traffic stop.

77. Summit County through the Sheriff's Office failed to adequately train Officer Graham regarding appropriately conducting field sobriety tests.

78. Summit County through the Sheriff's Office failed to adequately train Officer Graham regarding the necessary probable cause to initiate an arrest.

79. As a result of Summit County failure to train Officer Graham, Leon suffered an unconstitutional expansion of the scope of a traffic stop, unconstitutional arrest, and unconstitutional prosecution.

### THIRD CLAIM FOR RELIEF
*§ 1983 for Malicious Prosecution against Summit Count and Officer Graham*

80. The foregoing paragraphs are incorporated by reference.

81. Officer Graham electronically filed Anexora Leon's citation to Summit County Justice Court, thereby initiating the criminal case against Leon.

82. On October 27th, 2016, Summit County Justice Court issued a notice to appear in court within fourteen (14) days regarding the DUI charge.

83. Summit County received the results of the blood test on November 23rd, 2016.

84. Summit County lacked probable cause to charge Leon with a DUI because her BAC was .01.

85. Summit County moved to dismiss the case on January 17, 2017.

86. The DUI charge against Leon was dismissed with prejudice.

87. Summit County has a policy or practice by which the County commences prosecution of DUIs prior to receiving the result of BAC chemical tests.

88. As a result of this policy, Summit County prosecutes DUIs which lack probable cause.

89. Summit County, and Officer Graham's malicious prosecution of Leon violated Leon's constitutional rights.

## FOURTH CLAIM FOR RELIEF
*Request for Injunctive Relief*

90. The foregoing paragraphs are incorporated by reference.

91. U.C.A. § 77-7-20 requires a peace officer who issues a citation (including DUI citations) to electronically file the citation with the court specified in the citation within five days.

92. Once the citation has been filed, the Justice Court will issue a notice to appear in court to address the charges included in the citation.

93. The notice to appear in court officially commences "prosecution" of the individual cited.

94. It is not financially practicable for Summit County to run DUI blood tests and obtain the results to blood tests within the five (5) day period provided under U.C.A. § 77-7-20.

95. It generally takes weeks or months before Summit County receives the results of a DUI blood test.

96. Summit County therefore commences prosecution without any knowledge of the individuals BAC against individuals who have provided a blood sample.

97. When the blood test results come back with a BAC below .08, Summit County will generally dismiss the DUI charge.

98. Summit County's practice of prosecuting individuals for DUI where the individual has exhibited no signs that he is incapable of driving the vehicle and Summit County has yet to receive the BAC results from a blood test constitutes a practice of premature prosecution without reasonable suspicion.

99. Plaintiff requests the Court issue an order where Summit County is enjoined from prosecuting DUI charges against an individual without first obtaining that individuals BAC results.

## CLASS ALLEGATIONS

100. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

101. The class consists of (a) all individuals in Utah (b) who were cited with a DUI (c) who submitted to a blood test for determining the individual's BAC (d) wherein Summit County initiated prosecution of the DUI prior to Summit County obtaining the individual's BAC (e) whose BAC was under .08 and (f) who had the DUI charge favorably terminated (g) within the last four (4) years immediately preceding the filing of this complaint.

102. On information and belief, the class is so numerous that joinder of all members in not practicable. The information relating to the precise number of persons who fall within the class is within the control of the Defendant.

103. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are (a) whether Summit County is required to first obtain the individual's BAC before initiating prosecution of the DUI.

104. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

105. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and § 1983 claims.

106. A class action is superior for the fair and efficient adjudication of this matter, in that:
    a. Individual actions are not economically feasible;

  b. Members of the class are likely to be unaware of their rights;

## **PRAYER FOR RELIEF**

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class members and against defendants for:

  a. Compensatory and special damages in whatever amount exclusive of costs and interest;

  b. Punitive/exemplary damages against Defendants;

  c. For interest and costs as allowed by law;

  d. For attorney fees as allowed by 42 U.S.C. § 1988;

  e. Appropriate declaratory and injunctive relief against Summit County to stop Summit County from prosecuting DUIs without first obtaining the relevant BAC;

  f. Such other and further relief as the court deems appropriate.

Dated this 11th day of May, 2017.

AYRES LAW FIRM

/s/ Daniel M. Baczynski_____
Attorneys for Plaintiff