Tyler B. Ayres, Bar No. 9200
Daniel M. Baczynski, Bar No. 15530
AYRES LAW FIRM
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 255-5555 Phone
(801) 255-5588 Fax
tyler@ayreslawfirm.com
daniel.ayreslaw@gmail.com
Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DIVISION, STATE OF UTAH

| | |
|---|---|
| ANEXORA LEON,<br><br>On behalf of Plaintiff and Class,<br><br>vs.<br><br>SUMMIT COUNTY and OFFICER GRAHAM,<br><br>Defendants. | **PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br>Case No:  2:17-cv-0165<br><br>Judge:   David Nuffer |

Plaintiff Anexora Leon (Leon), by and through her counsel of record Dan Baczynski and Tyler Ayres of Ayres Law Firm, submits this memorandum in opposition to Defendants' Motion to Dismiss. Leon requests the Court allow Leon to continue pursuing her constitutional claims against Defendants in her individual capacity and on behalf of a class.

# TABLE OF CONTENTS

| SECTION | PAGE |
|---|---|
| TABLE OF AUTHORITIES | 3 |
| INTRODUCTION | 6 |
| STATEMENT OF FACTS | 7 |
| RESPONSE TO DEFENDANTS' STATEMENT OF FACTS | 8 |
| STANDARD OF REVIEW | 10 |
| ARGUMENT | 11 |
| I.    Officer Graham violated Leon's right to be free from unlawful searches by conducting a DUI investigation where Leon exhibited no signs of intoxication other than odor of alcohol derived from an admitted one drink Leon had at lunch. | 11 |
| II.    Summit County's practice of prosecuting DUIs prior to first obtaining BAC blood test results eventuated in the malicious prosecution of Leon and other similarly individuals as the practice inevitably results in prosecution of individuals with BACs under .08. | 16 |
| III.    Summit County should be enjoined from continuing its practice of prosecuting DUIs without first obtaining the driver's BAC because the practice results in deprivation of drivers' constitutional right to be free from unjust prosecution. | 20 |
| IV.    The Court should delay consideration of Defendants' motion to dismiss Leon's class allegations as Leon requires an opportunity to conduct discovery; and the allegations are sufficient to satisfy pleading requirements. | 22 |
| CONCLUSION | 26 |

## TABLE OF AUTHORITIES

| STATUTES | PAGES |
|---|---|
| 42 USCS § 1983 | 20, 22 |
| Fed Rules Civ Proc R 12 | 8, 9, 10, 23 |
| Fed Rules Civ Proc R 23 | 22, 23, 24, 25 |
| N.M. Stat. Ann § 66-8-102(A) | 15 |
| Utah Code Ann. § 41-6a-502 | 12, 16 |
| Utah Code Ann. § 77-7-18 | 17 |
| Utah Code Ann. § 77-7-20 | 17 |
| **SECONDARY SOURCES** | |
| 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990) | 10, 11 |
| **CASELAW** | |
| *Anderson v. City of Albuquerque*, 690 F.2d 796 (10th Cir. 1982) | 22 |
| *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252 (10th Cir. 1998) | 15, 16 |
| *Baum v. Great W. Cities, Inc.*, 703 F.2d 1197 (10th Cir. 1983) | 23 |
| *Conley v. Gibson*, 355 U.S. 41 (1957) | 10 |
| *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2nd Cir. 1995) | 24 |
| *Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005) | 18 |
| *Costello v. Beavex Inc.*, 303 F.R.D. 295 (N.D. Ill. 2014) | 23 |
| *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967) | 24 |
| *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974) | 22 |

| | |
|---|---|
| *Evers v. Cty. of Custer*, 745 F.2d 1196 (9th Cir. 1984) | 18, 19 |
| *Foman v. Davis*, 371 U.S. 178 (1962) | 10, 11 |
| *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381 (10th Cir. 1997) | 10 |
| *Gillibeau v. Richmond*, 417 F.2d 426 (9th Cir. 1969) | 23 |
| *In re Scott Cty. Master Docket*, 672 F. Supp. 1152 (D. Minn. 1987) | 19 |
| *In re Welding Fume Prods. Liab. Litig.*, 245 F.R.D. 279 (N.D. Ohio 2007) | 24 |
| *Kronmuller v. West End Fire Co. No. 3 Fire Dep't*, 123 FRD 170 (E.D. Pa, 1988) | 10 |
| *Mendez v. Radec Corp.*, 260 F.R.D. 38 (W.D.N.Y. 2009) | 23 |
| *Milburn v. United States*, 734 F.2d 762 (11th Cir. 1984) | 8, 9 |
| *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) | 19 |
| *Onyx Props. LLC v. Bd. of Cty. Comm'rs*, No. 10-cv-01482-LTB-KLM, 2011 U.S. Dist. LEXIS 12993 (D. Colo. Feb. 9, 2011) | 20 |
| *Ortiz v. Lyon Mgmt. Grp., Inc.*, 157 Cal. App. 4th 604 (2007) | 23 |
| *Owen v. City of Independece*, 445 U.S. 622 (1979) | 18, 19 |
| *Peterson v. Jensen*, 371 F.3d 1199 (10th Cir. 2004) | 10 |
| *Rutan v. Republican Party of Ill.*, 848 F.2d 1396 (7th Cir. 1988) | 23 |
| *Scheuer v. Rhodes*, 416 U.S. 232 (1974) | 21 |
| *Schrier v. Univ. of Colo.*, 427 F.3d 1253 (10th Cir. 2005) | 21 |
| *Shaw v. Valdez*, 819 F.2d 965 (10th Cir. 1987) | 9 |
| *State v. Sisneros*, 42 N.M. 500 (N.M. 1938) | 15 |
| *State v. Stewart*, 340 P.3d 802 (Utah Ct. App. 2014) | 14 |

| | |
|---|---|
| *S. Utah Wilderness All. V. Palma*, 707 F.3d 1143 (10th Cir. 2013) | 10 |
| *Stewart v. Avraham*, 275 F.3d 220 (3rd Cir. 2001) | 24 |
| *United States v. Soto*, 988 F.2d 1548 (10th Cir. 1993) | 12 |
| *United States v. Wilson*, 96 F. App'x 640 (10th Cir. 2004) | 12 |
| *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, No. 08-1330-JTM-KMH, 2015 U.S. Dist. LEXIS 22250 (D. Kan. Feb. 24, 2015) | 23 |
| *Wilder v. Turner*, 490 F.3d 810 (10th Cir. 2007) | 12, 13, 14 |
| *Vondrak v. City of Las Cruces*, 535 F.3d 1198 (10th Cir. 2008) | 12, 14, 15 |

**<u>INTRODUCTION</u>**

On October 27th, 2016, Officer Graham initiated a traffic stop against Leon for issues with Leon's license plate. During the lengthy traffic stop, Leon demonstrated no signs of intoxication. After Officer Graham discovered the correct license plate was in the trunk of Leon's newly purchased vehicle, Officer Graham claimed to detect the odor of alcohol coming from Leon's vehicle. Leon informed the officer she had one drink for lunch. Officer Graham commenced field sobriety tests without probable cause and ultimately arrested Leon for DUI with a .01 BAC.

Summit County commenced prosecution of the DUI charge on November 1, 2016, by issuing Leon a notice to appear in court. However, on the date Summit County commenced prosecution, Summit County did not have access to Leon's blood test results nor would it have access to the results until November 23rd, 2016. When the BAC results came back, Summit County dismissed the charges for lack of probable cause. Summit County routinely engages in the practice of prosecuting DUIs before obtaining the BAC result, forcing drivers to incur legal fees before Summit County adequately reviewing the case for probable cause.

Leon has filed two constitutional claims alleging Officer Graham expanded the scope of the traffic stop without reasonable suspicion and that Officer Graham and Summit County maliciously prosecuted Leon with a DUI despite a BAC of .01. In addition, Leon has brought claims on behalf of a class of individuals alleging Summit County's practice of prosecuting DUIs without first receiving blood test results is unconstitutional and requests the Court grant an injunction preventing Summit County from continuing this practice.

Leon has presented colorable facts and claims in support of all her causes of action. Therefore, Leon respectfully requests the Court deny Defendants' motion to dismiss as to all of Leon's cause of action.

## STATEMENT OF FACTS

Leon relies solely on the facts stated in her complaint which read as follows:

1. On October 27th, 2016, Officer Mike Graham observed a silver Chrysler 300 traveling westbound on Highland Drive. Amended Complaint at ¶ 7.

2. Officer Graham ran a computer records check on the license plate affixed to the rear bumper of the Chrysler. *Id* at ¶ 8.

3. The computer records check revealed a cancelled registration for the license plate. *Id* at ¶ 9.

4. Officer Graham stopped the Chrysler 300. *Id* at ¶ 10.

5. Leon was the driver of the Chrysler 300. *Id* at ¶ 11.

6. Leon told Officer Graham that the license plate for the vehicle was in the trunk of the vehicle. *Id* at ¶ 12.

7. After Leon opened the trunk, Officer Graham discovered license plates that were consistent with the registration of the vehicle and Leon. *Id* at ¶ 14.

8. While speaking with Leon, Officer Graham claims that he detected the odor of alcohol coming from the vehicle. *Id* at ¶ 15.

9. Officer Graham asked Leon if she had been drinking and she replied she had consumed one beer at lunch. *Id* at ¶ 16.

10. Leon showed no other signs of intoxication. *Id* at ¶ 17.

11. Officer Graham had Leon perform field sobriety tests. *Id* at ¶ 19.

12. Officer Graham then requested that Leon provide a portable breath test sample. See Original Complaint.

13. Leon requested the opportunity to call a friend prior to providing the breath sample. *Id*.

14. Officer Graham considered this a refusal. *Id*.

15. Officer Graham cited Leon with a DUI. See Amended Complaint at ¶ 22.

16. Officer Graham submitted the citation to Summit County Justice Court. *Id* at ¶ 23.

17. Leon provided a blood sample. *Id* at ¶ 24.

18. Leon's BAC at the time of the blood draw was .01. *Id* at ¶ 25.

19. Officer Graham electronically filed Anexora Leon's citation to Summit County Justice Court, thereby initiating the criminal case against Leon. *Id* at ¶ 36.

20. On October 27th, 2016, Summit County Justice Court issued a notice to appear in court within fourteen (14) days regarding the DUI charge. *Id* at ¶ 37.

21. Summit County received the results of the blood test on November 23rd, 2016. *Id* at ¶ 38.

22. Leon was charged with a DUI by Summit County on November 1, 2016. *Id* at ¶ 26.

23. Summit County moved to dismiss the case with prejudice on January 17, 2017 and the court granted dismissal. *Id* at ¶ 27.

## <u>RESPONSE TO DEFENDANTS' STATEMENT OF FACTS</u>

Defendants bring their motion to dismiss pursuant to FRCP 12(b)(6). Motions to dismiss brought pursuant to Rule 12(b)(6) are limited to the matters alleged in the complaint, yet Defendants seek to include in their statement of facts allegations that were

only presented in Defendants' answer. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). This causes issues as "[c]onsideration of matters beyond the complaint is improper in the context of a motion to dismiss but proper in the context of a motion for summary judgment." *Id*. The Court is therefore left with a few different options regarding consideration of materials outside the complaint: (1) disregard Defendants' statement of facts which is based solely on allegations in Defendants' answer; (2) convert the motion to one for summary judgment; or (3) consider the motion as one for judgment on the pleadings pursuant to Rule 12(c).

Leon is not opposed to striking material facts based on the Answer (Defendants' Material Facts 3, 4, 5, 6, 8, 10, 11). Alternatively, Leon does not oppose the Court converting the motion into a motion for summary judgment, though Leon would request she be permitted to conduct discovery before answering the motion for summary judgment.

The final alternative is the Court considers the motion to dismiss as a motion for judgment on the pleadings pursuant to FRCP 12(c) which, based on Defendants filing the answer and motion contemporaneously, may have been Defendants' intent. However, if the Court considers the motion as one for judgment on the pleadings, Leon still receives the benefit of the doubt regarding any allegations that are disputed by Defendants in their answer in that "the court assumes the veracity of the 'well-pleaded factual allegations' in the complaint and draws all reasonable inferences in the plaintiff's favor". *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987). Therefore, even if the Court converts the motion, the Court must still strike or consider false Defendants' Material Facts 3, 4, 5, 6, and 8 because these facts directly contest Leon's allegations.

## STANDARD OF REVIEW

Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). Even if it is doubtful that Plaintiff would ultimately prevail, if plaintiff colorably states facts which would entitle him to relief, dismissal should not be granted. *Kronmuller v. West End Fire Co. No. 3 Fire Dep't*, 123 FRD 170 (E.D. Pa, 1988). Dismissal cannot be granted unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997). Unless there is no law to support the claims made, a complaint will not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Conley v. Gibson*, 355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

In reviewing a motion to dismiss, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. *S. Utah Wilderness All. V. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013). Furthermore, general factual allegations of Defendant's conduct will suffice on a motion to dismiss, as the court "presumes general allegations embrace those specific facts that are necessary to support the claim". *Id*. (Citations omitted).

"A dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give Plaintiff leave to file an amended complaint. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that Plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to

overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that Plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim." 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 360-67 (2d ed. 1990); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

## ARGUMENT

I.     <u>Officer Graham violated Leon's right to be free from unlawful searches by conducting a DUI investigation where Leon exhibited no signs of intoxication other than odor of alcohol derived from one drink Leon admitted to having at lunch.</u>

Leon has presented a colorable claim that Officer Graham violated her constitutional rights when the officer expanded the scope of a traffic stop to conduct a DUI investigation with overwhelming evidence suggesting Leon was not impaired. Defendants claim the expansion of the traffic stop was warranted because Officer Graham detected the odor of alcohol emanating from Leon's vehicle. Though there have been some cases where odor of alcohol, by itself, has been sufficient to justify an expanded stop, all cases are considered within the totality of the circumstances. Where Officer Graham detected no signs of impairment other than odor of alcohol and admittance of one drink and Leon exhibited no signs of impairment, Officer Graham, based on the totality of the circumstances, lacked reasonable suspicion to expand the scope of the stop. As such, Leon's claim as alleged has merit and Defendants' Motion to Dismiss must be denied.

11

It is a clearly established Fourth Amendment right that a police officer must have reasonable suspicion in order to expand the scope of a traffic stop to conduct field sobriety tests. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206 (10th Cir. 2008); *Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007). "Under the reasonable suspicion standard, a police officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Vondrak*, 535 F.3d at 1206. "The determination of reasonable suspicion does not depend upon any one factor, but on the totality of the circumstances." *United States v. Wilson*, 96 F. App'x 640, 646 (10th Cir. 2004) (citing *United States v. Soto*, 988 F.2d 1548, 1555 (10th Cir. 1993))(emphasis added).

Based on the totality of the circumstances, Officer Graham lacked reasonable suspicion to conduct a DUI investigation. Officer Graham did not commence his DUI investigation until after he had resolved the license plate issue, providing Officer Graham with more than sufficient time to observe and consider multiple factors in evaluating Leon's possible intoxication. By the time Officer Graham expanded the stop, Officer Graham had failed to notice any signs of intoxication in: (1) Leon's driving pattern; (2) Leon's speech; (3) Leon's eyes; (4) Leon's motor functions; and (5) Leon's ability to cooperate with Officer Graham. Officer Graham's only evidence supporting possible intoxication was the odor of alcohol which was confirmed by Leon as the result of one drink at lunch. In Utah, having a drink and driving is only unlawful if it results in a BAC over .08 or the inability to safely operate the vehicle, and one drink at lunch would not be sufficient to bring Leon over .08. Utah Code Ann. § 41-6a-502. With Officer Graham

lacking any other factors to support unlawful conduct, the totality of the circumstances did

not support a reasonable suspicion of unlawful conduct.

Defendants cite to *Wilder v. Turner*, *Vondrak v. City of Las Cruces*, and *State v.

Stewart* in support of the argument that the odor of alcohol by itself constitutes reasonable

suspicion sufficient to justify a DUI investigation. Though these cases all included the odor

of alcohol as significant evidence used to justify reasonable suspicion for the stop, they all

are distinguishable from Leon's facts when considered in the scope of the totality of the

circumstances. In none of these cases did an officer justify a DUI stop solely on odor of

alcohol while facing significant evidence suggesting no unlawfulness by the driver.

In *Wilder v. Turner*, Officer Turner expanded a speeding traffic stop to a DUI

investigation based observed several indica of Plaintiff's alcohol consumption. *Wilder v.

Turner*, 490 F.3d 810, 815 (10th Cir. 2007). Officer Turner observed many indicators of

alcohol impairment, including "a moderate odor of alcohol, pinkish and watery eyes, a

flushed face, unusually slow and deliberate speech, and slow hand movements." *Id*. The

driver also admitted to having a glass of wine ten to fifteen minutes ago. *Id* at 811. When

Officer Turner asked the driver to exit the vehicle, he observed the driver had no difficulty

exiting or walking from the vehicle and driver's clothing was orderly, all signs indicating

lack of impairment. *Id*. When Officer Turner asked the driver to perform field sobriety

tests, the driver refused and was arrested. *Id*. The Tenth Circuit Court of Appeals upheld

these facts as sufficient to constitute reasonable suspicion to conduct a DUI investigation

based on the number of factors suggesting impairment *Id*.

The facts of *Wilder* are distinguishable from the facts in Leon based on the number of indica of alcohol consumption. In *Wilder*, the Officer observed several signs indicating alcohol consumption including odor, driver's eyes, driver's face, driver's speech, and driver's motor functions. Though the driver also showed signs of non-impairment (walking was fine and clothing orderly), the evidence of impairment overweighed the evidence on non-impairment, providing the officer with reasonable suspicion. In Leon's case, Officer Graham noticed no signs of impairment in Leon's eyes, face, speech, or motor functions, relying solely on odor and an admission that Leon had one beer. The evidence of impairment was outweighed by the evidence of non-impairment, denying Officer Graham reasonable suspicion.

Similarly, Defendants' reliance on *State v. Stewart* also fails because the Officer in *Stewart* observed multiple indica of intoxication, including driver being "jittery", "dancing around in the car", driver's pupils were constricted, and speech was slurred. *State v. Stewart*, 340 P.3d 802, 807 (Utah Ct. App. 2014). The officer observed multiple signs suggesting impairment with little evidence suggesting non-impairment. Based on the totality of the circumstances, the officer has reasonable suspicion of unlawfulness. Such is not the case for Leon because Officer Graham spent a significant amount of time with Leon and observed more signs of non-impairment than impairment, thus denying reasonable suspicion to expand the scope.

Defendants finally rely on *Vondrack v. City of Las Cruces*, wherein the 10th Circuit Court of Appeals found arguable reasonable suspicion – sufficient for qualified immunity but not a finding that officer's stop was constitutional - for a DUI stop based upon the

driver's testimony that he "had one beer three hours ago"." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1207 (10th Cir. 2008). The DUI stop had occurred in New Mexico and the opinion was buttressed by New Mexico law. *Id*. Pursuant to N.M. Stat. Ann § 66-8-102(A), it is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within [the state of New Mexico]. The 10th Circuit found "arguable reasonable suspicion" (not even reasonable suspicion but sufficient to prevail on qualified immunity) based "on the unlawfulness of any person under the influence of intoxicating liquor, however slight, from operating an automobile on any highway in New Mexico." *Id*, citing *State v. Sisneros*, 42 N.M. 500 (N.M. 1938). The officer had arguable reasonable suspicion of unlawfulness based on the admission of one drink because in New Mexico it is unlawful to operate a vehicle under any amount of impairment.

   *Vondrack* and its finding that arguable reasonable suspicion exists where a driver admits to a past drink are only applicable where it is unlawful to operate a vehicle under any influence of intoxicating liquor. Utah only outlaws operating a vehicle where the driver has a BAC above .08 or is unable to operate the vehicle safely, none of which would occur after having one beer for lunch. As such, Leon's admittance to having a beer would not be sufficient by itself, and in the face of opposing evidence, to justify a DUI investigation.

   The totality of the circumstances supported no reasonable suspicion to expand the scope of the traffic stop. As demonstrated by Defendants' cited cases, officers have a number of different indicia upon which they can rely in assessing the impairment of a driver. Because reasonable suspicion is based on the totality of the circumstances, an officer cannot ignore factors that suggest no impairment and focus solely on those which

support expanding the scope of a stop. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998). Officer Graham, upon conclusion of a traffic stop which originated with a bad license plate, observed many factors regarding Leon's possible impairment. Instead of assessing all the circumstances, Officer Graham focused on Leon's admitted drink and ignored all the factors suggesting non-impairment. Officer Graham did not have reasonable suspicion to expand the scope of the stop, therefore Leon's constitutional claim must survive the motion to dismiss.

II.     <u>Summit County's practice of prosecuting DUIs prior to first obtaining BAC blood test results eventuated in the malicious prosecution of Leon and other similarly individuals as the practice inevitably results in prosecution of individuals with BACs under .08.</u>

Summit County has a practice whereby it commences prosecution of individuals without first obtaining BAC blood test results. Because of this practice, Summit County prosecutes individuals for DUI despite having no knowledge of the individuals BAC.[1] Upon information and belief, the majority of individuals prosecuted under this practice end up with a BAC of .08 or greater. However, there is a subset of individuals – like Leon – who are charged with a DUI and the BAC returns below .08, in which case Summit County will dismiss the charge for lack of probable cause. For those individuals whose BAC was below .08, Summit County's practice constitutes malicious prosecution.

Summit County argues the claim should nevertheless be dismissed because Summit County was simply acting pursuant to Utah law. This argument is not a basis for dismissal because: (1) Summit County's practice of charging individuals with DUI prior to obtaining

---

[1] In Utah, it is only unlawful for an individual to be under the influence of alcohol if it causes the individual to be unable to operate the motor vehicle safely or the individual has a BAC over .08, therefore an individual's BAC is central to a DUI charge. Utah Code Ann. § 41-6a-502

the results of a BAC blood test is not dictated by Utah law; and (2) even if it were, a municipality's unconstitutional conduct, even if required by statute, is not a basis for escaping liability.

Summit County relies on Utah Code Ann. § 77-7-18 and § 77-7-20 to claim Summit County was forced to prosecute the DUI prior to completing a reasonable investigation (i.e. obtaining Leon's BAC). These statutes do not preclude Summit County from obtaining the BAC blood test results; Summit County merely chooses not to obtain the results in a timely manner to avoid the cost of expediting testing.

The five (5) day timetable for electronically filing a citation commences upon delivery of the citation. Utah Code Ann. § 77-7-20. Utah Code Ann. § 77-7-18 allows (**does not require)** a peace officer to issue a citation in lieu of or in addition to taking the person into custody. Officer Graham was not required to serve Leon with the citation at the time of arrest, he did so voluntarily (as most officers do) to avoid the hassle of finding and serving Leon in the future. Once the citation was delivered, Utah Code Ann. § 77-7-20 required Summit County to electronically file the citation with the relevant court within five (5) days, thereby commencing prosecution of the DUI. Pursuant to statute, Summit County had five (5) days to properly investigate the DUI and obtain the blood test results, but Summit County chose not to obtain the results within five (5) days because expediting the blood test costs more. Instead, Summit County waits weeks or months to obtain the blood test results, during which time Summit County prosecutes the DUI in case the BAC comes back above .08. In Leon's case, Summit County did not receive the results of the BAC blood test until November 23rd, 2016 – a month after commencing prosecution.

17

Utah statute does not require Summit County to prosecute DUIs without first obtaining the BAC. Utah law does require that Summit County act promptly once a citation has been delivered, but Summit County is not required to deliver the citation before a blood test has been processed. Furthermore, once the citation has been delivered, Summit County has an additional five (5) days to process the blood test before filing the citation with the court. Summit County has plenty of time to abide by the requirements of Utah law and the constitution but chooses not to because Summit County current practice – falsely charging the occasional driver with DUI – is cheaper.

However, even assuming that Summit County is required by Utah law to prosecute DUIs prior to learning an individual's BAC, Summit County would still be liable for its conduct. *See Cooper v. Dillon*, 403 F.3d 1208, 1223 (11th Cir. 2005); *Evers v. Cty. of Custer*, 745 F.2d 1196, 1204 (9th Cir. 1984). In *Cooper v. Dillon*, the Eleventh Circuit Court of Appeals held that a policy maker's decision to enforce a statute, which resulted in a deprivation of Plaintiff's constitutional rights, triggered municipal liability. *Cooper*, 403 F.3d at 1223. Similarly, in *Evers v. Custer County*, a case where a state statute granted a municipality's officers discretion in declaring a road public, the Ninth Circuit Court of Appeals reasoned that Monell liability could be found as to the municipality regardless of whether the officers were applying the statute in good faith because:

> The knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights. Furthermore, the threat that damages might be levied against the city might encourage those in a policymaking position to institute internal rules and programs designed to minimize the likelihood of unintentional infringements on constitutional rights.

*Evers*, 745 F.2d 1204 (quoting *Owen v. City of Independece*, 445 U.S. 622, 650-52, 100 S. Ct. 1398, 63 L. Ed. 2d. 673 (1979).

Accordingly, if a policymaker deprives a person of their constitutional rights as a result of the application of a state statute without regard to the application's constitutionality, the municipality could still be the subject of Monell liability. Even if Summit County was acting merely pursuant to Utah law, it would still be liable because its conduct violated Leon and other similarly situated individuals' right to be free from prosecution without probable cause.

Summit County's final argument for dismissing the malicious prosecution claim is based on prosecutorial absolute immunity. Though prosecutors are afforded absolute immunity, municipalities do not receive the same benefit. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 701 (1978) ("municipal bodies sued under § 1983 cannot be entitled to an absolute immunity"). Municipalities can be sued for malicious prosecution. See *In re Scott Cty. Master Docket*, 672 F. Supp. 1152 (D. Minn. 1987). Absolute immunity for Summit County's prosecutor therefore does not preclude Leon's case against Summit County.

None of Summit County's argument warrant dismissing Leon's malicious prosecution claim. Summit County is not required to prosecute DUIs without first obtaining the driver's BAC, Summit County merely does so because it is cheaper than the alternative. However, even if Summit County was acting pursuant to statute, Summit County would still be liable because its practice is unconstitutional. Finally, though Summit County's prosecutor is protected by absolute immunity, Summit County itself is not.

Summit County's practice forced Leon to defend herself from a DUI that was ultimately dismissed. Summit County forces the occasional innocent driver to incur legal expense so that Summit County can avoid the cost of serving citations and expedited blood test processing. The practice constitutes malicious prosecution, therefore the Court should not dismiss this claim.

III.　　Summit County should be enjoined from continuing its practice of prosecuting DUIs without first obtaining the driver's BAC because the practice results in deprivation of drivers' constitutional right to be free from unjust prosecution.

Piggybacking on Leon's claim for malicious prosecution, Leon brings a claim for injunctive relief, requesting the Court preclude Summit County from continuing its unconstitutional policy of prosecuting DUIs without first obtaining blood test. Leon makes her request for injunctive relief pursuant to 42 USCS § 1983 which allows for "suit[s] in equity, or other proceedings for redress". Leon has alleged Summit County's practice to be unconstitutional, therefore the claim should not be dismissed.

Defendants' first argument for dismissing the claim is that a request for an injunction generally is not an independent cause of action, justifying dismissal if all of Leon's other claims have been dismissed. Though generally true, 42 USCS § 1983 specifically allows for suits in equity, including suits based solely on a request for an injunction. See *Onyx Props. LLC v. Bd. of Cty. Comm'r*s, No. 10-cv-01482-LTB-KLM, 2011 U.S. Dist. LEXIS 12993, at *3 (D. Colo. Feb. 9, 2011). If all other causes of action are dismissed, the Court cannot dismiss the claim for injunctive relief on the basis that the injunctive claim cannot stand on its own.

20

Defendants also argue that dismissal is appropriate because such an injunction would strike an improper balance between constitutional rights and public policy. Defendants claim Summit County would be unable to insure the safety of its citizens if it was required to first check a driver's BAC before charging him with a DUI. Not only is the position absurd, but it is a request by Defendants for the Court to consider the merits of the claim – a determination not appropriate for consideration on a motion to dismiss. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Summit County is certainly free to present evidence indicating that it cannot abide by the injunction but that analysis is reserved for a jury. As such, Defendants public policy arguments are best reserved for the trier of fact.

Finally, Defendants argue the injunction should be dismissed because it constitutes a mandatory injunction – an injunction that requires the movant to act in a particular way. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1261 (10th Cir. 2005). Mandatory injunctions are disfavored because it puts the court in a role to supervise the party's conduct. *Id*.

To begin, Leon's requested injunction does not constitute a mandatory injunction because it does not require Defendants to act in any specific way. Leon only requests Defendants be prevented from continuing an unconstitutional practice; how Defendants continue to prosecute DUIs is completely within their discretion so long as the practice is constitutional.

Furthermore, even if the injunction was a mandatory injunction, mandatory injunctions are disfavored but not impermissible. *Id*. Courts are to issue mandatory injunctions under greater scrutiny, but that does not mean Leon is incapable of prevailing on such a request. Whether or not Leon's request is for a mandatory injunction does not

warrant dismissal because requests for mandatory injunctions are permissible (if disfavored) claims.

Leon respectfully requests her claim for an injunctive relief be allowed to survive Defendants' motion to dismiss. Leon has alleged an unconstitutional practice and § 1983 allows plaintiffs to pursue claims for injunctive relief to address such conduct. Defendants' argument for dismissal fails because: (1) a claim for injunctive relief under § 1983 is an independent claim and would survive despite the dismissal of Leon's other claims; (2) a determination on the merits of the injunction is not appropriate at this phase; and (3) even if the claim is for a mandatory injunctions, mandatory injunctions are permissible claims. Defendants are unable to present a basis for dismissing the claim, therefore Leon should be allowed to continue to litigate her request for injunctive relief.

IV.   The Court should delay consideration of Defendants' motion to dismiss Leon's class allegations as FRCP 23 provides Leon with an opportunity to conduct discovery for class certification.

In addition to bringing claims in her individual capacity, Leon seeks to bring a claim for malicious prosecution and injunctive relief on behalf of a class. Generally, class allegations are not addressed by a motion to dismiss but rather by a motion for class certification. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)(holding that a district court improperly weighed the merits of class action allegations on a motion to dismiss, rather than as required within rule 23's procedural safeguards); *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982)(holding that a district court improperly dismissed a proposed class action on its merits, and not on the basis of rule 23's requirements).

22

Pursuant to FRCP 23, a determination on class certification should be made as soon as practicable, realizing plaintiff may need to conduct some discovery in order to satisfy the four required elements. Defendants request the Court make an exception to the rule and determine class certification prematurely, relying only on Defendants' representations that "it is reasonable to believe that there is a very specific and small number of individuals" who will fit the class and that Plaintiff's claims "seem very unusual or atypical". A determination at this time on class certification would be contrary to FRCP 23.

A majority of courts have found that a determination on class certification should be made prior to a determination on the merits.[2] "In most circumstances, a judge should determine whether to grant or deny certification prior to ruling on the merits, as indicated by the text of Rule 23. Many courts find a motion to dismiss to be an inappropriate vehicle for addressing class certification. *Gillibeau v. Richmond*, 417 F.2d 426, 432 (9th Cir. 1969) ("Compliance with FRCP 23 is not properly tested by a motion to dismiss for failure to state a claim."); *Rutan v. Republican Party of Ill.*, 848 F.2d 1396, 1400 (7th Cir. 1988) (district court violated Rule 23 when it dismissed the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted but did not first consider whether the action may be properly brought as a class action). Other courts are less stringent, allowing courts to determine class certification on a motion to dismiss so long as the determination is compliant with FRCP 23. *Baum v. Great W. Cities, Inc.*, 703

---

[2] *Costello v. Beavex Inc.*, 303 F.R.D. 295, 309 (N.D. Ill. 2014) ("the issue of class certification should be resolved before determination of an action on the merits"); *Mendez v. Radec Corp.*, 260 F.R.D. 38, 44 (W.D.N.Y. 2009); *Ortiz v. Lyon Mgmt. Grp., Inc.*, 157 Cal. App. 4th 604, 625, 69 Cal. Rptr. 3d 66, 80 (2007); *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, No. 08-1330-JTM-KMH, 2015 U.S. Dist. LEXIS 22250, at *3 (D. Kan. Feb. 24, 2015).

F.2d 1197, 1210 (10th Cir. 1983). Whether by motion to dismiss or otherwise, courts are required to abide by Rule 23 in addressing class certification.

      To abide by FRCP 23, the Court must afford Leon an opportunity conduct discovery in order to establish the necessary elements, namely numerosity and commonality. To satisfy numerosity, Leon must establish the class is so numerous that joinder of all members is impracticable. Though no threshold has been established, courts have generally found numerosity to be satisfied by a class of 40 and have even certified classes with as few as 18.[3] Leon needs to conduct discovery to determine the size of the prospective class.

      In addition to numerosity Leon must also establish commonality amongst the class members. Defendants claim Leon's case is atypical; Leon must address the element by demonstrating her case has a common legal question with other proposed class members. In order to do so, Leon requires discovery from Defendants regarding similarly situated individuals: other drivers who were charged with a DUI but whose cases were dismissed after the blood test results showed a BAC below .08. To address class certification without providing Leon with an opportunity to conduct discovery would be premature and in violation of Rule 23.

---

[3] While a precise number has not been established, other courts have routinely certified classes under similar procedural rules consisting of substantially less than 100 people. *In re Welding Fume Prods. Liab. Litig.*, 245 F.R.D. 279, 296 (N.D. Ohio 2007) ("the Sixth Circuit Court of Appeals has affirmed certification of a class made up of less than 100 individuals"). Courts have allowed class to be certified consisting of as few as 18 persons. *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). In several other courts, the numerosity threshold is assumed to be met if there are 40 class members. See e.g. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995) ("numerosity is presumed at a level of 40 members"); *Stewart v. Avraham*, Case 2:13-cv-01124-BSJ Document 44 Filed 03/05/15 Page 6 of 16 7 275 F.3d 220, 227 (3rd Cir. 2001) ("generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met").

If the Court seeks to address the class certification question notwithstanding FRCP 23, Leon requests the Court deny dismissal of the allegations because the allegations are sufficient to state a class claim. In order to certify a class, Leon must allege four elements: numerosity, commonality, typicality, and adequacy of counsel. All have been alleged in the complaint. Numerosity has been sufficiently alleged as it is possible that a sufficient number of individuals has been falsely prosecuted by Summit County in the last four years. Leon has alleged commonality and typicality as the same legal question – whether Summit County should have waited for the blood test results before charging drivers with a DUI – is the common and prevailing question amongst all class members. Finally, Leon currently has adequate counsel in that: Tyler B. Ayres is very knowledgeable and experienced regarding DUI defense and prosecution, Ayres Law Firm has experience representing classes through its current representation of a class before the Utah District Court, and Ayres Law Firm has access to and the ability to work with other counsel experienced in class actions.

At this point, there is no reason for the Court to dismiss the class allegations. Class allegations are best addressed through a motion for class certification filed subsequent to conducting discovery rather than through motions to dismiss. However, even if the Court chooses to address class allegations, Leon has pled a class which can pass the requirements for certification pursuant to FRCP 23. On that basis, Leon requests the Court deny Defendants' motion to dismiss as to the class allegations.

**<u>CONCLUSION</u>**

Leon respectfully requests the Court deny Defendants' motion to dismiss as to Leon's claim for unreasonable search and seizure, claim for malicious prosecution, and request for injunctive relief. Regarding Leon's class allegation, Leon requests the Court delay consideration of class certification until Leon has had an opportunity to conduct discovery and adequately brief the issue. Alternatively, if the Court chooses to address class certification at this time, Leon requests the Court deny dismissal of the class allegations.

DATED this 25th day of May, 2017.

AYRES LAW FIRM


/s/      Daniel Baczynski
Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 25th day of May, 2017, I caused a true and correct copy of **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** to be electronically filed through the CM/ECF system, thereby sending notice to opposing counsel as follows:

> Peter Stirba
> Julia D. Kyte
> STIRBA, P.C.
> 215 South State Street, Suite 750
> Salt Lake City, UT 84110

/s/      Daniel Baczynski

27